**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **ASHLEY TAYLOR, Plaintiff,** | § | |
| | § | |
| | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** _____ |
| | § | |
| | § | **JURY TRIAL DEMANDED** |
| **CITY OF TYLER, TEXAS; STEPHANIE** | § | |
| **FRANKLIN, in her individual and official** | § | |
| **capacities; STUART HENE, in his individual** | § | |
| **and official capacities; and** | § | |
| **GRASSROOTS AMERICA – WE THE** | § | |
| **PEOPLE,  Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Plaintiff Ashley Taylor complaining of the named Defendants City of Tyler, Stephanie Franklin, Stuart Hene and Grassroots America – We the People seeks recovery as follows:

### I. NATURE OF THE ACTION

1.      This is a civil rights action arising from the unlawful retaliation, politically motivated demotion, and ultimate termination of a twenty-year public librarian in direct response to protected expressive activity, in violation of the First Amendment to the United States Constitution, actionable under 42 U.S.C. § 1983.

2.      Plaintiff Ashley Taylor served the Tyler Public Library with distinction for nearly two decades, consistently receiving evaluations of meeting or exceeding expectations. She was publicly humiliated by an elected official acting under color of law, stripped of her title, placed on administrative leave under a pretextual and admittedly nonexistent policy violation, subjected to a

sham investigation, and ultimately terminated, all because of political pressure arising from library signage and programming that outside advocacy groups found ideologically objectionable.

3.      Plaintiff also brings a Texas common-law claim for tortious interference with an existing employment relationship against Grassroots America, We the People, a political advocacy organization that conducted a sustained, multi-year campaign to pressure City officials to discipline and remove Plaintiff from her position, and whose conduct in furtherance of that campaign was independently tortious.

## II. JURISDICTION AND VENUE

4.      This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), as this action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

5.      This Court has supplemental jurisdiction over Plaintiff's state-law tortious interference claim pursuant to 28 U.S.C. § 1367(a), as that claim forms part of the same case or controversy.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all events and omissions giving rise to Plaintiff's claims occurred in Tyler, Smith County, Texas, within the Tyler Division of the Eastern District of Texas.

## III. PARTIES

7.      Plaintiff Ashley Taylor is an individual residing in Smith County, Texas. She was employed by the City of Tyler in the Tyler Public Library for nearly twenty (20) years with her last role as Director for approximately 7½ years. At all relevant times, Plaintiff engaged in expressive

and professional activity within the scope of her public employment and on matters of public concern.

8.    Defendant City of Tyler, Texas is a Texas home-rule municipality organized under the laws of the State of Texas. The City of Tyler operated and controlled the Tyler Public Library and employed Plaintiff at all times relevant to this action. The City acts through its policymakers, including the City Manager, City Council members, and senior administrative officials. The City is a "person" subject to suit under 42 U.S.C. § 1983. Defendant City of Tyler will be served through its City Manager, Ed Broussard, at 212 N Bonner Ave, Tyler, TX 75702.

9.    Defendant Stephanie Franklin was at all relevant times employed as a  Deputy City Manager for the City of Tyler official with supervisory authority over Plaintiff. She is sued in both her individual and official capacities. Franklin acted under color of state law at all times relevant herein. Defendant Franklin will be served at 212 N Bonner Ave, Tyler, TX 75702.

10.    Defendant Stuart Hene is a City of Tyler Council Member who, at all times relevant herein, acted under color of state law in his capacity as an elected official. He is sued in both his individual and official capacities. Defendant Hene will be served at 110 N. College Ave., Suite 1401 Tyler, Texas 75702.

11.    Defendant Grassroots America – We the People ("GRA") is a Texas political advocacy organization based in Smith County, Texas. GRA has conducted a sustained, coordinated public and private campaign targeting the Tyler Public Library, its programming, and its leadership, including Plaintiff, since at least December 2021. Defendant GRA will be served through its Executive Director, JoAnn Fleming, at 13128 Timber Creek Dr., Flint, TX 75762.

## IV. FACTUAL ALLEGATIONS

### A.    Plaintiff's Employment and Protected Activity

12.    Plaintiff Ashley Taylor served as Director of the Tyler Public Library for nearly twenty (20) years. Throughout her tenure, she received performance evaluations reflecting that she met or exceeded all expectations. She had no record of disciplinary action prior to the events described herein.

13.    Plaintiff's professional duties as Library Director necessarily involved expressive and editorial activity protected by the First Amendment, including the selection and curation of library materials, the creation and administration of library programming, the display of informational signage, and advocacy for public access to information and literature, all matters of significant public concern.

14.    Beginning in or around December 2021, the Tyler Public Library became the target of a sustained political harassment campaign orchestrated by GRA, its leadership, and affiliated individuals including Diane "Dee" Chambless, Mr. and Mrs. Tom Fabry, Robin Lee, JoAnn Fleming, and Sarah Fields. This campaign included online attacks against library staff, disruption of Library Board meetings, media campaigns, and repeated demands for the removal of library materials. Library staff were harassed, and Plaintiff was personally targeted.

15.    The Tyler Public Library Board, following established review procedures, voted 5-1 to retain contested library materials, including the graphic novel *Blue is the Warmest Color*. The Board's decision reflected the application of professional selection standards, not political viewpoint. GRA and its members thereafter escalated their campaign, targeting Plaintiff individually as the representative face of the Library's policies.

**B.      Plaintiff's Annual Evaluation and Supervisor's Viewpoint-Based Comments (September 25, 2025)**

16.      On or about September 25, 2025, Plaintiff received her annual performance evaluation from Defendant Stephanie Franklin at Tyler City Hall. All rated categories reflected that Plaintiff met or exceeded expectations.

17.      However, Defendant Franklin included a written supervisory comment directing Plaintiff to be "more tolerant of conservative/religious differences." When Plaintiff sought clarification, Franklin cited the Library's Dungeons & Dragons programming as an example of events she considered problematic, despite the absence of any formal complaint about that programming to Plaintiff's knowledge.

18.      This comment reflects that City supervisors were already monitoring and scrutinizing Plaintiff's professional activity through a politically and religiously weighted lens, consistent with GRA's external pressure campaign.

19.      When Plaintiff disclosed during the evaluation that she may be on the autism spectrum, as her son had been diagnosed, and sought clearer, more direct communication from her supervisor as a reasonable accommodation, Defendant Franklin dismissively responded that Plaintiff "didn't have autism." This response was harmful, disrespectful, and constitutes a refusal to engage with a good-faith request for workplace accommodation. It further reflects the hostile supervisory environment Plaintiff endured.

**C.      The September 26, 2025 Sign Incident and Public Reprimand by Councilman Hene**

20.      On September 26, 2025, a staff member at the Tyler Public Library, not Plaintiff, placed a standard library display sign on the exterior of the building. The sign displayed the following quotation by librarian and author Jo Godwin: *"A truly great library has something in it*

*to offend everyone."* The sign was not authored, commissioned, directed, or approved by Plaintiff. It was a well-recognized professional library quotation with an established pedigree in library science and information policy.

21.     GRA thereafter photographed the sign and published the image on its public social media account, falsely characterizing it as evidence of politically motivated harassment by the Tyler Public Library against groups that had challenged library materials. GRA tagged the Tyler Mayor and City Council members, as well as 2026 mayoral candidates Stuart Hene, James Wynne, and John Nix, demanding action. GRA's post stated that the Tyler Mayor and Council were "STILL proud of exposing taxpayer-funded smut to minor children", a false and defamatory characterization of the Library's lawful, professionally guided collection and programming decisions.

22.     David Stein, leader of GRA's affiliated organization the Smith County Republican Association, publicly stated on social media that he personally contacted Defendant Stuart Hene upon seeing GRA's post and requested that Hene intervene. Hene publicly confirmed he "personally worked to have it immediately removed."

23.     Defendant Hene thereafter arrived at the Tyler Public Library. Rather than requesting a private meeting, Hene confronted Plaintiff publicly in the library atrium, in full view of library staff and members of the general public. He pointed at the sign as it was being removed, demanded to know "what is that?!", declared he had been "defending" the library and "now this!", and proceeded to berate and chastise Plaintiff in a loud and aggressive manner. He ordered that the sign be removed immediately and never placed outside again.

24.    Plaintiff apologized, confirmed the sign was not an intentional provocation, identified that a Reference staff member had placed it without Plaintiff's direction, and confirmed that the sign would not be returned to display. Despite Plaintiff's full compliance, Hene dismissed her and walked away. Plaintiff was visibly shaken, texted her supervisors immediately, and left the workplace. Plaintiff was observed leaving by Ami Fortriede and the Library's security guard.

25.    Hene's conduct constituted a public, official governmental reprimand of a public employee for speech and expression he found ideologically objectionable. His actions were taken under color of his authority as an elected City official, were calculated to intimidate Plaintiff and suppress future expressive activity at the Library and would chill a person of ordinary firmness from engaging in constitutionally protected speech.

26.    Critically, Plaintiff was punished for speech she did not author, direct, or approve. Plaintiff was the Library Director, but the sign was placed by a Reference staff member without Plaintiff's knowledge or instruction. The City's decision to hold Plaintiff personally responsible and ultimately to demote and terminate her for the independent expressive act of a staff member further demonstrates that the adverse actions taken against her were driven by viewpoint-based animus, not legitimate administrative concerns.

27.    The text messages exchanged between Plaintiff and Defendant Franklin in the immediate aftermath of the sign incident confirm that: (a) Plaintiff promptly reported Hene's conduct; (b) the sign was already in the process of being removed before Hene's arrival; and (c) Defendant Franklin responded not with concern for Plaintiff's mistreatment by an elected official, but with a message indicating that conversations about "political climate and the need for sensitivity" could not keep recurring, further evidence that the City was capitulating to viewpoint-

based political pressure rather than fulfilling its obligation to protect Plaintiff's constitutional rights.

### D.    Politically Motivated Demotion (September 30, 2025)

28.    On September 30, 2025, approximately one month after the sign incident, Plaintiff was summoned to a meeting with Defendant Franklin and City Communications Director Julie Goodgame. At that meeting, Plaintiff was told she must accept a demotion or face termination.

29.    When Plaintiff, as a mother of four children dependent on her income, indicated she would accept the demotion rather than termination, Defendant Franklin expressed surprise. Plaintiff was informed she would be reduced to a generic "librarian" position, with no explanation of her new duties, responsibilities, or compensation provided.

30.    Defendants Franklin and Goodgame explicitly stated that the basis for this decision was political: they explained that the sign incident had caused "major strife" in Goodgame's negotiations with State Representative Daniel Alders on pending tax legislation. Plaintiff had no prior knowledge of any such negotiations. The City's stated rationale was therefore openly and admittedly political and legislative in character, not disciplinary or performance based.

31.    That same afternoon, Plaintiff was required to attend a meeting with the broader Tyler Public Administration group, including Assistant City Manager Ami Fortriede and other senior officials, at which she was publicly announced as being removed from her position as Library Director.

### E.    Pretextual HR Investigation and Termination

32.     Following the demotion decision, Plaintiff filed a complaint with the City's Human Resources department, describing her belief that the demotion was politically motivated and undeserved. She directed written appeals to City Manager Ed Broussard and Mayor Warren. Neither responded.

33.     On or about October 8, 2025, Plaintiff met with City HR Director Susan and City Attorney Deborah Pullum. Plaintiff was informed she was being placed on paid administrative leave pending a third-party investigation by a firm called Workshield. The written paperwork given to Plaintiff stated that she was being placed on leave for a "policy violation." When Plaintiff asked which policy she had violated, City officials admitted that no policy had been violated and that the form was merely a "blanket" document used in all administrative leave placements.

34.     City HR personnel instructed Plaintiff not to discuss the investigation with staff. However, they simultaneously indicated that Plaintiff could socialize with staff outside of work hours and stated she could "still hang out after hours and grab lunch or dinner." Plaintiff was further told she could inform administrative staff of the leave status. Plaintiff relied on these representations in good faith.

35.     On October 27, 2025, Plaintiff participated in a telephone interview with Workshield. The Workshield representative expressed the view that this appeared to be an internal matter and that Workshield's involvement "didn't seem necessary." Workshield ultimately closed the case on November 7, 2025, and returned the matter to the City's HR department without any adverse findings against Plaintiff.

36.     Despite Workshield's closure of the case, Plaintiff was never informed of this development by the City or by Workshield. Plaintiff learned of the closure only when she

independently contacted Workshield on November 18, 2025. Upon learning this, Plaintiff sent a text message to HR personnel informing them of what she had discovered.

37.    On December 9, 2025, Plaintiff was called into HR and met with City HR personnel. She was informed that: (a) her underlying complaint of politically motivated demotion had been found "insubstantial"; and (b) the City was recommending her for termination, not on the original pretextual "policy violation" basis that City officials had already admitted was nonexistent, but on the entirely new ground that she had allegedly violated the instruction not to discuss the investigation by texting HR personnel to report what she had learned from Workshield about the case closure.

38.    Plaintiff attempted to explain that her text communicated only the procedural status of the investigation, not its contents, and that she had been told she could communicate with staff regarding her leave status. City officials refused to hear her explanation and proceeded with the termination recommendation.

39.    Plaintiff filed a written appeal to City Manager Ed Broussard on December 14, 2025. On the evening of December 15, 2025, she received a two-sentence denial issued from his administrative assistant's desk, without any substantive engagement with the merits of her appeal.

40.    The sequence of events, a demotion tied explicitly to political and legislative pressure; placement on leave under an admittedly nonexistent policy violation; a third-party investigation that closed without adverse findings; and a termination based on a new, manufactured pretext constructed from Plaintiff's good-faith communication with HR, reflects a predetermined decision to remove Plaintiff from her position for constitutionally impermissible reasons, with each successive justification fabricated to obscure the politically motivated nature of that decision.

### F.    Monell Liability: Custom, Practice, and Final Policymaker Authorization

41.    The City of Tyler's liability is not limited to the acts of individual actors. The adverse employment actions taken against Plaintiff resulted from, and were ratified by, the acts and omissions of final policymakers with authority over Plaintiff's employment, including City Manager Ed Broussard, whose office issued the final denial of Plaintiff's appeal, and City Council members including Defendant Hene, who exercised governmental authority to directly demand the suppression of Library speech.

42.    Moreover, the City's pattern of conduct from December 2021 through Plaintiff's termination, repeatedly capitulating to GRA's demands regarding library collections, programming, and personnel, reflects an established custom and practice of subordinating the constitutional rights of Library employees to the viewpoint preferences of organized political advocacy groups. This custom was so persistent and widespread that it constitutes the functional policy of the City of Tyler with respect to the Tyler Public Library.

43.    The City's deliberate indifference is further demonstrated by: the failure of City Manager Broussard and Mayor Warren to respond to Plaintiff's appeal; the City Attorney's participation in the placement of Plaintiff on leave under an admittedly nonexistent policy violation; and the City's adoption of a post-hoc termination rationale after the third-party investigator found no basis for adverse action.

### G.    GRA's Intentional Interference with Plaintiff's Employment

44.    From December 2021 through Plaintiff's termination in December 2025, GRA and its leadership conducted a sustained and coordinated campaign to pressure the City of Tyler to discipline and remove Plaintiff, including: public social media posts attacking Plaintiff and the Library; organized attendance and disruption at Library Board meetings; campaigns targeting City

officials and elected council members; and direct private communications with City Council members requesting intervention, as publicly confirmed by GRA leader David Stein.

45.    GRA's September 26, 2025 social media post circulating the image of the library sign, falsely characterizing the Tyler Public Library as exposing "taxpayer-funded smut to minor children," and tagging City officials and candidates, was the proximate trigger that set in motion the chain of events leading to Plaintiff's demotion and termination.

46.    GRA's post contained false statements of fact, including the characterization of the library's lawful, professionally administered collection and programming decisions as the deliberate exposure of obscene material to children. These statements were published to third parties including elected officials, candidates, and the general public, and caused reputational harm to Plaintiff as the Library's Director. Such false statements of fact, published to third parties and causing harm to Plaintiff in her professional capacity, constitute defamation and/or business disparagement under Texas law, satisfying the independent tort requirement for tortious interference under *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001).

47.    GRA knew that Plaintiff was employed by the City of Tyler as Library Director. GRA intentionally sought to cause the termination of that employment relationship by pressuring political actors to take adverse action against Plaintiff. GRA succeeded: its direct contact with Councilman Hene was publicly acknowledged by GRA's own leadership, and the City's stated rationale for Plaintiff's demotion was the political fallout caused by GRA's social media campaign.

## V. CAUSES OF ACTION

### COUNT I

**First Amendment Retaliation — 42 U.S.C. § 1983**
*(Against Defendants City of Tyler, Stephanie Franklin, and Stuart Hene)*

48.    Plaintiff incorporates by reference all preceding paragraphs.

49.    Plaintiff engaged in speech and expressive activity on matters of public concern, including library curation, programming administration, and the institutional display of the Jo Godwin quotation sign through the Library's established signage practices.

50.    To the extent Defendants argue that Plaintiff's speech was made pursuant to her official duties and therefore falls outside First Amendment protection under *Garcetti v. Ceballos*, 547 U.S. 410 (2006), that argument fails for the following independent reasons:

a. The sign at issue was placed by a Reference staff member, not by Plaintiff. Plaintiff did not author, direct, commission, or approve the sign. Plaintiff cannot be held to have spoken "pursuant to her official duties" with respect to speech she did not make;

b. Even where a public employee speaks in the course of official duties, the First Amendment retains force when the government's adverse action is motivated by the viewpoint of the speech rather than any legitimate managerial concern. *See Lane v. Franks*, 573 U.S. 228 (2014);

c. The City's own stated rationale for the demotion — protecting legislative negotiations from political fallout — is not a legitimate managerial efficiency interest cognizable under *Garcetti* or the *Pickering* balancing test. *Pickering v. Board of Education*, 391 U.S. 563 (1968). Suppressing a librarian's institutional speech to avoid political friction with a state legislator does not outweigh the significant First Amendment interest in public library expression on matters of broad public concern.

51.    Defendants took a series of adverse employment actions against Plaintiff, public reprimand, demotion, administrative leave, and termination, that would chill a person of ordinary firmness from engaging in constitutionally protected activity.

52.    Plaintiff's protected speech and perceived viewpoint were substantial or motivating factors in Defendants' adverse actions, as evidenced by: the explicit political justification offered for the demotion; the timing of adverse actions in direct response to GRA's public pressure campaign; Hene's publicly acknowledged intervention at the request of GRA; Defendant Franklin's

evaluation comment conditioning Plaintiff's performance on ideological sensitivity; and the pretextual and serially shifting nature of the termination rationale.

53.     The City of Tyler is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), as set forth in Section IV.F above.

54.     Defendant Franklin is individually liable for her role in delivering the politically motivated demotion ultimatum, facilitating the placement of Plaintiff on administrative leave under an admittedly nonexistent policy violation, and failing to protect Plaintiff from unconstitutional retaliation, all while acting under color of state law.

55.     Defendant Hene is individually liable for his public confrontation and official governmental reprimand of Plaintiff, undertaken in his capacity as an elected official at the express request of a political advocacy organization, constituting the exercise of governmental authority to suppress constitutionally protected library speech.

## COUNT II

### Viewpoint Discrimination — 42 U.S.C. § 1983
*(Against Defendants City of Tyler, Stephanie Franklin, and Stuart Hene)*

56.     Plaintiff incorporates by reference all preceding paragraphs.

57.     The First Amendment prohibits government actors from discriminating against speech based on its viewpoint. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995). Viewpoint discrimination occurs when the government targets not the subject matter of speech but the particular view expressed.

58.     Defendants' actions, including Hene's demand that a library quotation be permanently suppressed because of the viewpoint it expressed; Defendant Franklin's evaluation

comment conditioning Plaintiff's satisfactory performance on demonstrating greater tolerance of politically conservative and religious viewpoints; and the City's explicit linkage of adverse employment action to political pressure from a conservative advocacy organization,constitute unconstitutional viewpoint-based discrimination against the expressive activity of a public institution and its Director.

59.     Defendants acted under color of state law and thereby deprived Plaintiff of rights secured by the First and Fourteenth Amendments to the United States Constitution.

## COUNT III

### Tortious Interference with Existing Employment Relationship
*(Against Defendant Grassroots America – We the People)*

60.     Plaintiff incorporates by reference all preceding paragraphs.

61.     Plaintiff had an existing employment relationship with the City of Tyler as Director of the Tyler Public Library, a position she had held for nearly twenty (20) years.

62.     GRA had actual knowledge of that employment relationship, having targeted Plaintiff by name and by position throughout its multi-year campaign against the Tyler Public Library.

63.     GRA willfully and intentionally interfered with that relationship by: organizing and executing public social media campaigns designed to pressure City officials to discipline and remove Plaintiff; making direct private contact with City Council Member Hene requesting intervention; publishing false statements of fact characterizing the Library's lawful professional activities as the deliberate exposure of children to obscene material; and generating political pressure that was explicitly cited by City officials as the reason for Plaintiff's demotion and that proximately led to her termination.

64.    GRA's interference was independently tortious. GRA published false statements of fact, including that the City of Tyler and its Library were "proud of exposing taxpayer-funded smut to minor children" to elected officials, candidates, and the general public. These false factual statements caused Plaintiff reputational harm in her professional capacity and constitute defamation and/or business disparagement under Texas law. This independently tortious conduct satisfies the requirement of *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001).

65.    GRA's interference was not legally justified. The constitutional right to petition government does not immunize a private actor from tortious interference liability when that actor publishes false statements of fact about a public employee and conducts a sustained, targeted campaign designed and intended to destroy a specific individual's employment relationship.

66.    As a direct and proximate result of GRA's tortious interference, Plaintiff lost her position of nearly twenty years, her income, her employment benefits, and suffered substantial damage to her professional reputation and career.

## VI. DAMAGES

67.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer the following damages:

a. Back pay: lost wages and all employment benefits from the date of demotion through the date of judgment;

b. Front pay: the present value of future lost wages and benefits Plaintiff would have earned but for Defendants' unlawful conduct, or reinstatement in lieu thereof;

c. Compensatory damages: for emotional distress, mental anguish, humiliation, damage to professional reputation, and other non-economic harms proximately caused by Defendants' conduct;

d. Punitive damages: against Defendant Hene in his individual capacity and against Defendant GRA, to the extent permitted by applicable law, for conduct that was intentional,

malicious, and undertaken in deliberate disregard of Plaintiff's constitutional and common-law rights;

e. Attorneys' fees and costs: pursuant to 42 U.S.C. § 1988 and other applicable law.

## VII. INJUNCTIVE AND DECLARATORY RELIEF

68.     Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaration from this Court that Defendants' conduct violated the First Amendment to the United States Constitution.

69.     Plaintiff seeks reinstatement to her former position as Director of the Tyler Public Library with the City of Tyler, or in the alternative, an award of front pay in lieu of reinstatement.

70.     Plaintiff seeks such other injunctive relief as the Court deems appropriate to remedy the constitutional violations alleged herein, including relief directed at preventing continued viewpoint-based interference in the operations of the Tyler Public Library.

## VIII. JURY DEMAND

71.     Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ashley Taylor respectfully requests that this Court:

(a) Enter judgment in Plaintiff's favor on all counts;

(b) Award Plaintiff back pay, front pay, and all lost employment benefits;

(c) Award Plaintiff compensatory damages for emotional distress, mental anguish, humiliation, and reputational harm in an amount to be determined by the jury;

(d) Award Plaintiff punitive damages against Defendants Hene and Grassroots America – We the People;

(e) Award Plaintiff attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

(f) Issue a declaration pursuant to 28 U.S.C. § 2201 that Defendants' conduct violated the First Amendment to the United States Constitution;

(g) Order reinstatement to Plaintiff's former position as Library Director, or in the alternative, an award of front pay; and

(h) Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ William S. Hommel, Jr.*
William S. Hommel, Jr.
State Bar No. 09934250
bhommel@hommelfirm.com
Hommel Law Firm PC
5620 Old Bullard Road, Suite 115
Tyler, Texas 75703
903-596-7100 Telephone/Facsimile

**ATTORNEY FOR PLAINTIFF
ASHLEY TAYLOR**
