**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| ASHLEY TAYLOR,<br>      Plaintiff,<br><br>v.<br><br>CITY OF TYLER, TEXAS;<br>STEPHANIE FRANKLIN, in her<br>individual and official capacities;<br>STUART HENE, in his individual<br>and official capacities; and<br>GRASSROOTS AMERICA – WE THE<br>PEOPLE,<br>      Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:26-cv-00168-JDK<br><br>JURY TRIAL DEMANDED |

**DEFENDANT GRASSROOTS AMERICA – WE THE PEOPLE'S
MOTION TO DISMISS UNDER RULE 12(b)(6)**

**TABLE OF CONTENTS**

Statement of the Issues.................................................................................................... 1

    I. Introduction ........................................................................................................ 2

    II. Factual Background............................................................................................ 3

    III. Standard of Review.......................................................................................... 4

    IV. Argument ........................................................................................................ 5

        A.    The First Amendment forecloses tort liability for the public criticism and petitioning the Complaint describes. .............................................................. 5

            1.  *Claiborne Hardware* and the First Amendment bar civil tort liability for nonviolent advocacy on a matter of public concern. .................................... 5

            2.  The Petition Clause and *Noerr-Pennington* protect appeals to elected officials. ........ 6

        B.    Plaintiff fails to plead a viable Texas tortious interference claim under either applicable framework. .............................................................................. 7

            1.  To the extent Count III is analyzed as interference with prospective relations, it fails for want of independently tortious conduct. ....................................... 8

            2.  Treated as interference with an existing at-will contract, the claim fails because Plaintiff pleads no inducement of breach of any legal right under the contract.................................................................................................... 8

        C.    The defamation and business disparagement predicate fails as a matter of law. .......... 9

            1.  The challenged statement is not "of and concerning" Plaintiff. ................................ 9

            2.  The challenged statement is non-actionable opinion and rhetorical hyperbole on a matter of public concern....................................................................... 10

            3.  As a public official, Plaintiff has not plausibly pleaded actual malice. ...................... 11

            4.  Business disparagement separately fails for want of pleaded special damages......... 12

            5.  Pre-April 2025 conduct is time-barred. ........................................................... 12

        D.    The Complaint does not plead legally cognizable proximate cause. ......................... 13

        E.    Plaintiff's punitive damages claim falls with Count III. ............................................ 14

    V. Conclusion ...................................................................................................... 14

Certificate of Service .................................................................................................. 16

Certificate of Conference............................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................... 3, 4, 9

*Bayou Fleet, Inc. v. Alexander,*
    234 F.3d 852 (5th Cir. 2000) ............................................................................... 7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................... 4, 5

*Bentley v. Bunton,*
    94 S.W.3d 561 (Tex. 2002) .............................................................................. 10, 11

*Cal. Motor Transp. Co. v. Trucking Unlimited,*
    404 U.S. 508 (1972) .............................................................................................. 7

*Causey v. Sewell Cadillac-Chevrolet, Inc.,*
    394 F.3d 285 (5th Cir. 2004) ............................................................................... 5

*Doe v. Boys Clubs of Greater Dallas, Inc.,*
    907 S.W.2d 472 (Tex. 1995) ............................................................................... 13

*E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.,*
    365 U.S. 127 (1961) .............................................................................................. 7

*El Paso Healthcare Sys., Ltd. v. Murphy,*
    518 S.W.3d 412 (Tex. 2017) ........................................................................... 1, 3, 8

*Forbes Inc. v. Granada Biosciences, Inc.,*
    124 S.W.3d 167 (Tex. 2003) ............................................................................... 12

*Gertz v. Robert Welch, Inc.,*
    418 U.S. 323 (1974) ............................................................................................. 11

*Greenbelt Coop. Publ'g Ass'n v. Bresler,*
    398 U.S. 6 (1970) ................................................................................................ 10

*Holloway v. Skinner,*
    898 S.W.2d 793 (Tex. 1995) .............................................................................. 7, 9

*Hurlbut v. Gulf Atl. Life Ins. Co.,*
    749 S.W.2d 762 (Tex. 1987) ............................................................................... 12

*IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason,*
    143 S.W.3d 794 (Tex. 2004) ............................................................................... 13

*In re Lipsky*,
  460 S.W.3d 579 (Tex. 2015)................................................................................ 12

*Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*,
  603 S.W.3d 409 (Tex. 2020)................................................................................ 12

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ................................................................................ 4

*Mayfield v. NASCAR, Inc.*,
  674 F.3d 369 (4th Cir. 2012) .............................................................................. 11

*Michel v. NYP Holdings, Inc.*,
  816 F.3d 686 (11th Cir. 2016) ............................................................................ 11

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990)................................................................................................ 10

*NAACP v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982)......................................................................................... 2, 5

*Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*,
  512 F.3d 137 (5th Cir. 2007) .............................................................................. 12

*New Times, Inc. v. Isaacks*,
  146 S.W.3d 144 (Tex. 2004)......................................................................... 10, 11

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ................................................. 6, 11

*Newspapers, Inc. v. Matthews*,
  339 S.W.2d 890 (1960)................................................................................... 9, 10

*Phan Son Van v. Pena*,
  990 S.W.2d 751 (Tex. 1999)............................................................................... 13

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*,
  29 S.W.3d 74 (Tex. 2000)..................................................................................... 9

*Rosenblatt v. Baer*,
  383 U.S. 75 (1966)............................................................................................. 11

*Schlueter v. Schlueter*,
  975 S.W.2d 584 (Tex. 1998)............................................................................... 14

*Snyder v. Phelps*,
  562 U.S. 443 (2011)............................................................................................. 6

*Sterner v. Marathon Oil Co.*,
  767 S.W.2d 686 (Tex. 1989)................................................................................. 8

*Stripling v. Jordan Prod. Co.*,
  234 F.3d 863 (5th Cir. 2000) .................................................................. 14

*United Mine Workers v. Ill. State Bar Ass'n*,
  389 U.S. 217 (1967)............................................................................... 6

*United Mine Workers v. Pennington*,
  381 U.S. 657 (1965) ............................................................................... 7

*Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*,
  858 F.2d 1075 (5th Cir. 1988) ............................................................... 7

*Wal-Mart Stores, Inc. v. Sturges*,
  52 S.W.3d 711 (Tex. 2001)............................................................. 1, 2, 7

*WFAA-TV, Inc. v. McLemore*,
  978 S.W.2d 568 (Tex. 1998)................................................................. 11

**Statutes**

42 U.S.C. § 1983.................................................................................... 2

Tex. Civ. Prac. & Rem. Code § 16.002(a).......................................... 1, 12

Tex. Civ. Prac. & Rem. Code § 16.003(a).............................................. 1

**Rules**

Local Rule CV-7(a)(1)............................................................................. 1

## STATEMENT OF THE ISSUES

Pursuant to Local Rule CV-7(a)(1), Defendant Grassroots America – We the People ("GRA") presents the following issues:

1. Whether the First Amendment forecloses Count III, which seeks tort damages against a civic advocacy organization for the persuasive effect of public criticism of a public library and petitioning of elected officials on a matter of public concern.

2. Whether Count III, analyzed as Texas tortious interference, fails because (a) on the prospective-relations track, Plaintiff pleads no independently tortious or unlawful conduct under *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001), and (b) on the existing-contract track, Plaintiff pleads no interference with any contractual term, employment policy, or legal right under her at-will employment, *see El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412 (Tex. 2017).

3. Whether the alleged defamation and business disparagement predicate fails because (a) the challenged statement is not "of and concerning" Plaintiff, (b) the statement is non-actionable opinion and rhetorical hyperbole, (c) actual malice is not plausibly pleaded as to a public official, (d) special damages are not pleaded with the specificity Texas requires for business disparagement, and (e) the bulk of the alleged conduct is time-barred under Tex. Civ. Prac. & Rem. Code §§ 16.002(a) and 16.003(a).

4. Whether Plaintiff has pleaded legally cognizable proximate cause where, on the Complaint's own allegations, the City of Tyler made each challenged employment decision through independent municipal actors and internal review processes, and Plaintiff does not plausibly attribute those decisions to any unprotected conduct by GRA.

1

## I. INTRODUCTION

This is, at bottom, a public-employment dispute between Plaintiff Ashley Taylor and the City of Tyler, with a state-law tort claim appended against a civic advocacy organization. Plaintiff was the Director of the Tyler Public Library. The City demoted and then terminated her after a series of internal personnel decisions. She has sued the City, the Deputy City Manager, and a sitting Council Member under 42 U.S.C. § 1983. This motion does not address those claims.

The only claim against GRA is Count III, captioned as tortious interference with an existing employment relationship. Count III rests on a single September 26, 2025, social media post that allegedly accused the Mayor and the City Council, not Plaintiff, of being "STILL proud of exposing taxpayer-funded smut to minor children," together with a multi-year course of public criticism of Library programming dating back to December 2021. Compl. ¶¶ 14, 21–22. The Complaint identifies defamation "and/or business disparagement" as the supposed independent tort that animates the claim. *See* Compl. ¶¶ 46, 64.

Count III fails for several independent reasons, any one of which warrants dismissal under Rule 12(b)(6). First, the conduct at the heart of the Complaint, public criticism of a public library and appeals to elected officials, is constitutionally protected. The Supreme Court squarely held in *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), that nonviolent political advocacy on a matter of public concern cannot be transmuted into tort liability. *Claiborne Hardware*, 458 U.S. at 910, 918. Second, the claim fails on the merits under both available Texas frameworks. If treated as prospective-relations interference, *Sturges* requires independently tortious conduct, and the only candidate Plaintiff offers, defamation or business disparagement, fails as a matter of law. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001). If treated as existing-contract interference, the Complaint identifies no contractual term, employment policy, or legal right under

Plaintiff's employment relationship with which GRA allegedly interfered. *See El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421–22 (Tex. 2017). Third, the speech predicate independently fails: the post is not "of and concerning" Plaintiff, the operative language is opinion and rhetorical hyperbole, actual malice is not plausibly pleaded as to a public official, business disparagement special damages are not pleaded, and the bulk of the alleged campaign is time-barred. Fourth, the Complaint does not plead legally cognizable proximate cause: protected advocacy and petitioning, followed by independent municipal personnel decisions and layers of internal review, do not give rise to tort liability against GRA for the persuasive effect of its speech.

Because the defects are legal rather than factual, amendment would be futile. Count III should be dismissed with prejudice.

## II. FACTUAL BACKGROUND

On a Rule 12(b)(6) motion, the Court accepts the Complaint's well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pertinent allegations against GRA are these.

GRA is a Texas "political advocacy organization." Compl. ¶ 11. Beginning in December 2021, GRA and affiliated individuals criticized Library programming and materials through Library Board appearances, social media posts, and "media campaigns." Compl. ¶ 14. The Library Board voted 5–1 in 2022 to retain a contested book; GRA continued its public-advocacy efforts. Compl. ¶ 15.

On September 26, 2025, after a Library staff member placed an exterior sign quoting librarian Jo Godwin ("A truly great library has something in it to offend everyone"), GRA photographed the sign and posted it to its public social media account. Compl. ¶¶ 20–21. The post tagged the Mayor, all members of the City Council, and three identified mayoral candidates.

3

Compl. ¶ 21. The post stated that the Mayor and Council were "STILL proud of exposing taxpayer-funded smut to minor children." *Id.* It did not name Plaintiff, did not identify her by title, and did not accuse her of any conduct. *See id.* An affiliate, David Stein, identified by Plaintiff as the leader of the Smith County Republican Association, separately stated on social media that he had personally contacted Council Member Hene about the sign. Compl. ¶ 22.

The City of Tyler thereafter took adverse employment action against Plaintiff. The Deputy City Manager and the City's Communications Director told Plaintiff that her demotion was based on "major strife" the sign incident had caused in legislative-relations negotiations with State Representative Daniel Alders concerning unrelated tax legislation, something Plaintiff alleges she had no prior knowledge of. Compl. ¶¶ 28–30. The City's Human Resources department placed Plaintiff on administrative leave; an outside investigator reviewed the matter and "closed the case" without adverse findings; the City Manager later upheld a termination recommendation; and the Mayor did not respond to Plaintiff's appeal. Compl. ¶¶ 32–40.

The Complaint does not allege that GRA had any contractual or business relationship with Plaintiff, communicated with Plaintiff, made any false statement of fact about Plaintiff by name, or participated as a decisionmaker in any City personnel decision.

### III. STANDARD OF REVIEW

To survive Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts well-pleaded facts as true and views them in the plaintiff's favor, *Lormand v. US Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009), but "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678. A complaint that

4

alleges no more than "labels and conclusions" or a "formulaic recitation" of elements does not suffice. *Twombly*, 550 U.S. at 555.

The Court may also consider documents "referred to in the plaintiff's complaint and . . . central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). The September 26, 2025 social media post and the Library sign quoted in the Complaint are central to Count III and may properly be considered.

## IV. ARGUMENT

### A.      The First Amendment forecloses tort liability for the public criticism and petitioning the Complaint describes.

Count III seeks tort damages against an advocacy organization for the persuasive effect of its public criticism of a public institution and its appeals to elected officials. The First Amendment forecloses that result. The Supreme Court has held that nonviolent political advocacy on a matter of public concern cannot be converted into tort liability, even where the advocacy succeeds in causing economic harm to the plaintiff.

#### 1.      *Claiborne Hardware* and the First Amendment bar civil tort liability for nonviolent advocacy on a matter of public concern.

In *NAACP v. Claiborne Hardware Co.*, the Supreme Court reversed a million-dollar tort judgment against civil rights organizers whose public boycott, speeches, and pressure campaign against white merchants in Mississippi caused substantial economic injury. 458 U.S. 886 (1982). The Court held that "[s]peech does not lose its protected character . . . simply because it may embarrass others or coerce them into action." *Id.* at 910. Petitioners were "not liable in damages for the consequences of their nonviolent, protected activity," and only "those losses proximately caused by . . . unlawful conduct" were recoverable. *Id.* at 887, 918.  *Claiborne Hardware* is not a blanket immunity for advocacy; unprotected conduct (true threats, incitement) can still give rise

5

to liability. But it forecloses the use of state tort law to penalize nonviolent political pressure on a matter of public concern.

The conduct at the heart of Count III falls within *Claiborne Hardware*'s protection. The Library's materials and programming were a matter of acknowledged public controversy debated in Library Board meetings, civic forums, and the press over a four-year period. Compl. ¶¶ 14–15. Speech "relating to any matter of political, social, or other concern to the community" occupies "the highest rung" of First Amendment protection. *Snyder v. Phelps*, 562 U.S. 443, 452 (2011). The First Amendment leaves "breathing space" for "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials," *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964), and tort doctrine cannot be used to circumvent that breathing space. The Complaint does not plead true threats, fraud, incitement to imminent lawless action, bribery, extortion, or any other unprotected category of speech. As shown below, none of the speech it does plead falls outside the First Amendment's protection: there is no defamatory statement of and concerning Plaintiff, the operative language is opinion and rhetorical hyperbole, and actual malice is not plausibly pleaded. The First Amendment therefore bars Count III at the threshold.

### 2. The Petition Clause and *Noerr-Pennington* protect appeals to elected officials.

The Complaint's core allegation is that GRA tagged the Mayor and Council in a social media post, an affiliate publicly stated that he had contacted a Council Member, and a Council Member "personally worked" in response. Compl. ¶¶ 21–22. That is petitioning of elected officials. The right "to petition the Government for a redress of grievances" is "among the most precious of the liberties safeguarded by the Bill of Rights." *United Mine Workers v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967).

The *Noerr-Pennington* doctrine, grounded in the Petition Clause, protects genuine petitioning of government from liability even when the petitioner acts with self-interested or adverse motives. *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). The doctrine arose in antitrust but extends beyond it. The Fifth Circuit has recognized that "*Noerr-Pennington* should be applied in all contexts" where it would otherwise burden Petition Clause activity. *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988); *see also Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 859–60 (5th Cir. 2000) (applying *Noerr-Pennington* to non-antitrust claims premised on petitioning). The doctrine is not absolute: a "sham" petition is not protected. *Cal. Motor Transp.*, 404 U.S. at 513. But on the Complaint's allegations, the petitioning here was not a sham. The post and the affiliate's outreach achieved their stated goal: government attention to a public-policy concern. Compl. ¶¶ 21–22. *Noerr-Pennington* reinforces what *Claiborne Hardware* establishes on its own: protected petitioning cannot be repackaged as a tort.

**B.      Plaintiff fails to plead a viable Texas tortious interference claim under either applicable framework.**

Texas recognizes two distinct tortious-interference torts. Interference with an existing contract requires (1) a valid contract subject to interference, (2) a willful and intentional act of interference, (3) proximate cause, and (4) actual damage. *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995). Interference with prospective relations requires those elements plus a showing that the defendant's conduct was "independently tortious or unlawful." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). "Tortious interference with a prospective business relationship requires a finding that the defendant engaged in independently tortious or unlawful

7

conduct; interference with an existing contract does not." *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421 (Tex. 2017). The Complaint, despite its caption, fits neither framework.

### 1.   To the extent Count III is analyzed as interference with prospective relations, it fails for want of independently tortious conduct.

Plaintiff was an at-will public employee. Texas recognizes that at-will arrangements may support an interference claim. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex. 1989). The Complaint expressly invokes *Sturges* and identifies defamation "and/or business disparagement" as the "independent tort" supporting the claim. Compl. ¶¶ 46, 64 (citing 52 S.W.3d 711, 726 (Tex. 2001)). Having pleaded the claim in *Sturges* terms, Plaintiff must satisfy the independent-tort requirement to the extent Count III is analyzed as prospective-relations interference.

On that framework, Plaintiff must plead and prove independently tortious conduct. *Sturges*, 52 S.W.3d at 726. "Conduct that is merely 'sharp' or unfair . . . is not actionable." *Id.* The only candidate Plaintiff identifies is defamation or business disparagement. As shown in Section IV.C, that predicate fails as a matter of law. With no independent tort, the *Sturges* prong of any interference theory falls.

### 2.   Treated as interference with an existing at-will contract, the claim fails because Plaintiff pleads no inducement of breach of any legal right under the contract.

Even assuming Plaintiff had an at-will employment relationship capable of supporting an existing-contract interference claim, Count III does not identify any contractual term, employment policy, or legal right under that employment relationship with which GRA allegedly interfered. The Complaint instead alleges protected public advocacy followed by the City's own discretionary personnel decisions. That is not enough under *Murphy*, 518 S.W.3d at 421–22.

*Murphy* holds that an existing-contract interference plaintiff must establish interference with "legal rights under" the contract. 518 S.W.3d at 422. The Texas Supreme Court rendered

8

judgment for the defendant where the plaintiff could not identify any such right that the defendant's conduct disrupted. *Id.* The same defect appears here. The Complaint identifies no provision, policy, or legal right under Plaintiff's employment that GRA's public speech allegedly displaced. The existing-contract elements include "a willful and intentional act of interference with the contract." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995). Public advocacy followed in temporal sequence by an employer's discretionary action is not, without more, a plausibly pleaded act of interference. *Iqbal*, 556 U.S. at 678.

> **C.     The defamation and business disparagement predicate fails as a matter of law.**

Plaintiff's tortious-interference claim depends entirely on her assertion that the September 26, 2025, post (and the surrounding multi-year campaign) was defamatory or disparaging. The predicate fails on five independent grounds. Each is sufficient on its own.

> **1.     The challenged statement is not "of and concerning" Plaintiff.**

A defamation or business disparagement claim requires a statement "of and concerning" the plaintiff. *Newspapers, Inc. v. Matthews*, 339 S.W.2d 890, 893 (1960). The plaintiff must show "that the alleged defamation referred to him," and the publication must "point to the plaintiff" such that those who knew her would understand it as referring to her. *Id.* That requirement is constitutional as well as common-law: the First Amendment requires that liability rest on a statement that, in context, identifies the plaintiff as its target.

The post the Complaint quotes does not satisfy that requirement. By Plaintiff's own allegations, the post said the Mayor and the Council were "STILL proud of exposing taxpayer-funded smut to minor children," and tagged the Mayor, all Council members, and three identified mayoral candidates. Compl. ¶ 21. It did not name Plaintiff. It did not identify her by title. It did

not accuse her of any conduct. It directed its criticism at elected policymakers, not at the Library Director. The Complaint attempts to bridge the gap by alleging that Plaintiff was the "representative face" of Library policies. Compl. ¶ 15. That is not enough. Texas courts have rejected attempts to satisfy the "of and concerning" requirement by inference from organizational role where the publication addresses other persons or institutions. *Matthews*, 339 S.W.2d at 893 (holding that [the plaintiff could not] recover for libel ... for the reason that the articles refer[red] to no person who could possibly be identified as [him]). Therefore, where the publication points to others, a plaintiff cannot satisfy the requirement merely by inference from her institutional role.

### 2.    The challenged statement is non-actionable opinion and rhetorical hyperbole on a matter of public concern.

Even setting the "of and concerning" defect aside, the operative language is not actionable. "Statements that cannot reasonably be interpreted as stating actual facts about an individual are protected." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). The First Amendment carves out "'imaginative expression' [and] the 'rhetorical hyperbole' which has traditionally added much to the discourse of this Nation." *Id.* (citing *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970)). Texas courts apply the same framework. *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 154 (Tex. 2004); *Bentley v. Bunton*, 94 S.W.3d 561, 580-81 (Tex. 2002).

The word at the center of the Complaint, "smut," is value-laden political rhetoric and moral criticism, not a verifiable factual claim about Plaintiff. Read in the context that the Complaint itself describes (a partisan civic advocacy account, a multi-year ideological dispute over public-library materials, a post tagged to elected officials and political candidates), a reasonable reader would understand the language as expressing the speaker's view that certain library materials and programming were inappropriate for children. *See Bentley*, 94 S.W.3d at 579 (meaning of a publication depends on "a reasonable person's perception of the entirety of a publication and not

10

merely on individual statements"). The Texas Supreme Court has emphasized that context (forum, audience, surrounding debate) is dispositive. *Isaacks*, 146 S.W.3d at 154, 157. The forum here is partisan political speech on a matter of public concern; the operative term is moral, not factual. That is rhetoric, not actionable assertion.

### 3.    As a public official, Plaintiff has not plausibly pleaded actual malice.

The Director of the Tyler Public Library at minimum, the Complaint's allegations support limited-purpose public-figure treatment under *Rosenblatt v. Baer*, 383 U.S. 75, 85–86 (1966), at least with respect to commentary on her official performance. *Rosenblatt* asks whether the position is one that the public has "an independent interest in the qualifications and performance of the person who holds it." *Id.* at 86. Library policy and programming, the matters at issue here, are core official functions. Alternatively, the Complaint's own allegations support limited-purpose public-figure treatment at least as to the public controversy over Library materials and programming. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974); *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 573 (Tex. 1998).

Either status triggers the actual-malice standard: a plaintiff may recover only on "proof that the statement was made with 'actual malice,' that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Bentley*, 94 S.W.3d at 590–91. The Complaint does not plausibly plead it. The pleading offers labels ("willfully and intentionally," "false"), Compl. ¶¶ 63–64, but no factual content from which the Court could infer knowledge of falsity or reckless disregard. *Twombly* and *Iqbal* require more than that. *See Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 377–78 (4th Cir. 2012) (dismissing where actual malice was pleaded only conclusorily); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (same).

**4.    Business disparagement separately fails for want of pleaded special damages.**

To the extent Plaintiff's claim sounds in business disparagement (a category Plaintiff invokes alongside defamation, *see* Compl. ¶¶ 46, 64), the claim independently fails. Texas business disparagement requires the plaintiff to plead and prove (1) publication of false and disparaging information, (2) with malice, (3) without privilege, and (4) special damages. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003); *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987); *In re Lipsky*, 460 S.W.3d 579, 591-92 (Tex. 2015). The tort "protects economic interests," and proof of "special damages" is a "fundamental element" of the cause of action. *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020); *Hurlbut*, 749 S.W.2d at 767.

Special damages must be pleaded and proved with specificity, in the form of "the loss of trade or other dealings," meaning specific lost transactions, customers, or pecuniary opportunities. *Hurlbut*, 749 S.W.2d at 767. The Complaint pleads none. Plaintiff pleads lost employment compensation, not lost commercial dealings, customers, sales, or other pecuniary opportunities of the kind business disparagement protects. The claim also fails on the "of and concerning" and rhetorical-hyperbole grounds set out above, which apply equally to disparagement. *See Forbes*, 124 S.W.3d at 170–72 (defamation's First Amendment limitations apply to business disparagement).

**5.    Pre-April 2025 conduct is time-barred.**

Texas's libel statute imposes a one-year limitations period that runs from publication. Tex. Civ. Prac. & Rem. Code § 16.002(a); *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 144–45 (5th Cir. 2007). Business disparagement is governed by the two-year period in § 16.003(a). The Complaint was filed on April 8, 2026. Any defamation predicate older than April

8, 2025, is barred; any business disparagement predicate older than April 8, 2024 is barred. Either way, the multi-year course of conduct alleged in paragraphs 14 and 44 of the Complaint, dating to December 2021, is largely outside the limitations window. Only the September 26, 2025, post falls within both periods, and that post fails for the four reasons above. Plaintiff cannot rely on time-barred alleged publications as the independently tortious predicate for a timely interference claim.

### D.    The Complaint does not plead legally cognizable proximate cause.

Even if the speech predicate survived, Count III would fail for want of proximate cause. Proximate cause requires both cause-in-fact and foreseeability, and "new and independent" acts of third parties break the causal chain. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *Phan Son Van v. Pena*, 990 S.W.2d 751, 754 (Tex. 1999). Conduct that "does no more than furnish a condition which makes the injuries possible" is not a cause in fact. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). The more attenuated the chain, the less the law treats it as a basis for liability, particularly where the asserted causal link runs through protected speech and an independent decisionmaker.

On the Complaint's own allegations, Plaintiff's injury is the product of a series of intervening municipal decisions, each made by a different actor and through layers of independent municipal review. The Deputy City Manager and the Communications Director conveyed a demotion-or-termination ultimatum, citing "major strife" in negotiations with State Representative Daniel Alders concerning unrelated tax legislation, Compl. ¶¶ 28–30; the City's HR department placed Plaintiff on administrative leave, Compl. ¶ 33; an outside investigator examined the matter and "closed the case" without adverse findings, Compl. ¶ 35; the City Manager later upheld a termination recommendation, Compl. ¶¶ 37, 39; and the Mayor declined to act on Plaintiff's appeal, Compl. ¶ 32. The Complaint does not plausibly attribute any of those discretionary municipal decisions to unprotected conduct by GRA. Protected advocacy and petitioning followed

13

by independent governmental employment decisions is not legally cognizable proximate cause for tortious interference, especially where the original speech enjoys First Amendment protection.

### E. Plaintiff's punitive damages claim falls with Count III.

Plaintiff seeks punitive damages against GRA. *See* Compl. (Prayer). Because Count III is the only claim asserted against GRA, and because Count III fails for the reasons above, the punitive damages request necessarily falls with it. Punitive damages are not a freestanding cause of action; they require a viable underlying tort and pleaded facts supporting the requisite mental state. The Complaint pleads neither. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998)("recovery of punitive damages requires a finding of an independent tort with accompanying actual damages").

### V. CONCLUSION

The Complaint asks the Court to convert protected political speech and petitioning into private tort liability against a civic advocacy organization. The First Amendment forecloses that result, and the Complaint independently fails to plead a viable Texas tortious-interference claim under either available framework. Defendant Grassroots America – We the People respectfully requests that the Court dismiss Count III with prejudice. The defects identified are legal rather than factual. In context, the full statement was political/moral criticism of library materials and elected officials, not a verifiable factual assertion about Plaintiff. The challenged statement is not of and concerning Plaintiff, the operative speech is opinion and rhetorical hyperbole on a matter of public concern, the asserted independent tort cannot be repleaded around these defects, and the proximate-cause chain runs through the City's own independent decision-making. Amendment would be futile. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).

Respectfully submitted,

DHILLON LAW GROUP INC.

/s/John-Paul S. Deol
John-Paul S. Deol
    Texas Bar No. 24127469
    JPDeol@dhillonlaw.com

James E. Trainor, III
    Texas Bar No. 24042052
    Attorney-in-Charge
    JTrainor@dhillonlaw.com

Dhillon Law Group Inc.
177 Post Street, Suite 700
San Francisco, CA 94108
Tel: 415-433-1700
Fax: 415-520-6593

ATTORNEYS FOR DEFENDANT
GRASSROOTS AMERICA – WE THE PEOPLE

15

**CERTIFICATE OF SERVICE**

I certify that on the date of the electronic file stamp affixed by the Court's CM/ECF system,

a true and correct copy of the foregoing was served on all counsel of record via that system.


/s/John-Paul S. Deol
John-Paul S. Deol


**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(i)(1), the meet-and-confer requirement does not apply to

motions to dismiss. *See* E.D. Tex. L.R. CV-7(i)(1). Defendant nonetheless presumes this motion

is opposed.

/s/John-Paul S. Deol
John-Paul S. Deol


16