**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| ASHLEY TAYLOR, | § | |
| | § | |
| *PLAINTIFF* | § | |
| | § | |
| | § | **CIVIL ACTION NO. 6:26-cv-168-JDK** |
| VS. | § | |
| | § | |
| CITY OF TYLER, TEXAS; STEPHANIE | § | |
| FRANKLIN, in her individual and official | § | |
| capacities, STUART HENE, in his individual | § | |
| and official capacities; AND GRASSROOTS | § | |
| AMERICA – WE THE PEOPLE, | § | |
| | § | |
| *DEFENDANTS* | § | |

**DEFENDANTS' 12(B)(6) MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants City of Tyler, Texas (the "City"), Stephanie Franklin, and Stuart Hene file this Motion to Dismiss Plaintiff's claims as set forth in Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.    INTRODUCTION

Plaintiff filed her Original Complaint against the City and Grass Roots America ("GRA") on April 8, 2026. (Doc. 1).  GRA filed a Rule 12(b)(6) Motion to Dismiss on May 7, and Plaintiff subsequently filed a Response (Doc. 12) and Sur-Reply (Doc. 15) defending her Original Complaint over the next few weeks.

The City then filed its Rule 12(b)(6) Motion to Dismiss on June 2. (Doc. 16).  This time, though, Plaintiff did not even bother to try to defend her Original Complaint against the City's Motion and, instead, immediately amended her complaint—seemingly seeing the writing on the

wall that her Original Complaint was fatally defective as to her claims against the City, Hene, and Franklin.  The Amended Complaint (Doc. 27) attempts to save Plaintiff's fatally defective lawsuit by throwing as much against the wall as possible in hopes that something sticks.  But nothing does.

Plaintiff fails to state a claim for either First Amendment or viewpoint discrimination or retaliation under 42 U.S.C. § 1983, and her Complaint should be dismissed accordingly.

Furthermore, Defendants Hene and Franklin are also entitled to qualified immunity from liability for Plaintiff's claims.

Plaintiff's attempt to plead *Monell* liability against the City is insufficient regarding all three necessary elements.

Finally, Plaintiff's claim that she was deprived of procedural and substantive due process fails.

## II.    STATEMENT OF ISSUES

1.  Has Plaintiff pled sufficient facts to establish a plausible claim for First Amendment retaliation despite the "speech" underlying the claim either being admittedly not made by Plaintiff or which had to do with matters within the scope of Plaintiff's job duties?

2.  Has Plaintiff pled sufficient facts to establish a plausible claim for viewpoint discrimination despite the "speech" underlying the claim did not express a cognizable viewpoint, and had to do with matters within the scope of Plaintiff's job duties?

3.  Has Plaintiff pled sufficient facts to support *Monell* liability against the City given that Plaintiff did not allege an actual violation of Plaintiff's constitutional rights or a City policy that was the moving force behind any such violation?

4.  Are Hene and Franklin's entitled to qualified immunity in their individual capacities?

5.  Had Plaintiff sufficient facts to establish a plausible claim that Plaintiff's procedural and substantive due process rights violated?

### III.    ALLEGATIONS IN AMENDED COMPLAINT

Plaintiff claims that her First Amendment rights were violated in response to three instances of allegedly protected speech: (1) a text message to a City human resource staff member regarding the Workshield investigation; (2) formal HR complaints and appeals sent to the City Manager and Mayor; (3) Plaintiff's speech in response to Defendant Hene's confrontation about the library sign. In Plaintiff's Complaint, she also alleges that the "great library" sign was her protected speech regarding a matter of public concern. To such extent Plaintiff still identifies the "great library" sign as her expression, Plaintiff's claim must fail due to the fact that she did not actually make that statement.

In her Complaint, Plaintiff alleges the following series of events:

1. Plaintiff's role as Director involved duties such as selection and curation of library materials, the creation and administration of library programming, and the display of informational signage. Compl. ⁋ 13.

2. On September 26, 2025, another library staff member, ***not Plaintiff***, placed a display sign at the entrance of the library stating, "*A truly great library has something in it to offend everyone.*" Plaintiff asserts that she ***did not*** author, commission, direct, or approve of the sign. Amend. Compl. ⁋ 18.

3. Later that day, Plaintiff was allegedly directed to remove the sign by Defendant Stuart Hene, a then-acting City Council member. Amend. Compl. ⁋ 23. She responded to Defendant Hene that the sign had been placed by another staff member without the authorization of Plaintiff and confirmed the sign would not be returned to display. Amend. Compl. ⁋ 24. Plaintiff contends this speech addressed matters of public concern, despite being made in her supervisory role as library director about the actions of staff members.

4.   On September 30, 2025, Plaintiff was allegedly demoted to a generic librarian position by the City. Amend. Compl. ⁋ 27.

5.   Following the alleged demotion, Plaintiff sent a letter to the City Manager and Mayor appealing the alleged demotion. Amend. Compl. ⁋ 28. Plaintiff alleges this communication, somehow, is protected speech due to the subject matter being one of public concern, and which was made in her capacity as a private citizen.

6.   On October 8, 2025, Plaintiff was placed on paid administrative leave pending a third-party investigation by Workshield. Amend. Compl. ⁋ 29.

7.   Plaintiff sent a text message to City HR personnel on November 18, 2025, notifying them of the procedural status of the Workshield investigation. Amend. Compl. ⁋ 32, 36. Plaintiff alleges this text message is protected speech made as a private citizen regarding a subject of public concern.

8.   Plaintiff was ultimately terminated on December 9, 2025 for violating the City's instruction not to discuss the Workshield investigation with other city employees. Amend. Compl. ⁋ 35.

9.   After this decision, Plaintiff wrote another letter to City Manager appealing her termination. Amend. Compl. 36.

In her Complaint, Plaintiff seeks damages for First Amendment retaliation and viewpoint discrimination, alleging that the speech noted above addressed matters of public concern, as opposed to matters within her employment as library director, and is therefore protected. Given the nature, audience, and content of these statements, Plaintiff cannot clear the *Garcetti* test and therefore fails to maintain First Amendment protection. All of these statements were made in Plaintiff's capacity as Library Director and relate to matters related to such employment.

Under Plaintiff's fallacious interpretation of *Garcetti* she asks the Court to apply, any and all communications of any public employee with HR about their employment would qualify as matters of public concern, which is, obviously, not the law.

## IV.    ARGUMENTS & AUTHORITIES

### A.    Legal Standard for Defendants' Motion to Dismiss

A dismissal pursuant to Rule 12(b)(6) is proper when it appears beyond a doubt that the plaintiff can prove no set of facts in support of his or her claims that would entitle the plaintiff to relief. *See Rubinstein v. Collins*, 20 F.3d 160, 166 (5th Cir. 1994).

Furthermore, to avoid dismissal, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged [by the plaintiff]." *Id*. "We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 670 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Twombly*, 544 U.S. at 555). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498—499 (5th. Cir. 200).

**B.**     **Plaintiff failed to sufficiently plead her claim of First Amendment retaliation.**

### 1.  *Applicable Law*

To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, Plaintiff must show:

(1) Plaintiff suffered an adverse employment decision;

(2) Plaintiff made speech regarding a matter of public concern as a private citizen;

(3) the Plaintiff's interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency in the workplace; and

(4) Plaintiff's protected speech motivated the employer's retaliatory action. *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 563 (5th Cir. 2003).

If an employee demonstrates that the speech at issue involves a matter of public concern, the court must perform a balancing test and attempt to strike a balance between the interests of the employee as a citizen, in commenting upon matters of public concern, against the interest of the employer, in promoting the efficiency of the public services it performs through its employees. *Brown v. Bd. of Trs. Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 596 (S.D. Tex. 2012).  If the plaintiff meets the burden on these four elements, the defendant must prove that it would have taken the adverse employment action even absent the protected speech. *Id*.

### 2.  *Plaintiff's Complaint fails.*

#### a.  **Plaintiff has not engaged in protected speech.**

In her Original Complaint, Plaintiff contended that the protected speech at issue was the "*great library*" poster mentioned above. Plaintiff has since amended her complaint to include additional speech, speech that was actually made by her. To the extent that Plaintiff continues to assert that the "*great library*" sign was speech involving a matter of public concern, such claim must fail on the fact that Plaintiff did not actually author that speech. Amend. Comp. ⁋ 18. Based

on Plaintiff's pleading alone, the court need not go on to engage in the balancing test regarding this statement because it was speech she did not make.

For example, in an analogous Fifth Circuit case to Plaintiff's "*great library*" speech theory, a plaintiff's First Amendment retaliation claim was properly dismissed where he did not plead any specific speech or statements that were the supposed basis of retaliation; he only pled that he was terminated for refusing to do something his supervisor asked.  *Guerra v. Castillo*, 82 F.4th 278, 289 (5th Cir. 2023).  The same should result here regarding any claim regarding the "*great library*" sign.

### b. Not all of Plaintiff's speech could have motivated the adverse employment action.

Plaintiff states in her Amended Complaint that her written appeal to City Manager Ed Broussard on December 14, 2025, was protected speech made regarding a matter of public concern. Amend. Compl. ⁋ 50. However, this speech could not have been a motivating factor in Plaintiff's termination because it occurred after her termination on December 9, 2025. Amend. Comp. ⁋ 36. The court should disregard this speech made by Plaintiff in that it logically and factually could not be a motivating factor for the adverse employment action taken before the speech.

### c. Any relevant speech made by Plaintiff as a library employee is unprotected by the First Amendment.

It is well established that a public employee's speech may be deprived of First Amendment protection at times. While an employee is not deprived of all First Amendment rights, they are limited to speech regarding matters of public concern, of which they are speaking as a citizen, not an employee. *Garcetti v. Ceballos,* 547 U.S. 410, 417, 126 S. Ct. 1951, 1957 (2006).

Following the precedent set by *Pickering v. Board of Education*, the Court applies a two-part inquiry to determine whether an employee's speech is afforded First Amendment protections. 391 U.S. 563 (1968); *Garcetti* at 418.

First, the Court determines whether the employee spoke as a citizen on a matter of public concern. *Id*. If yes, then the question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. *Id*.

In *Garcetti*, the controlling factor was that the employee's expressions were made pursuant to his job duties. *Id* at 421. The court held that when public employees *make statements pursuant to their official duties*, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline. *Id*.

For example, in *Finch*, a former school principal alleged that her statements about the proper way to run a school were a matter of public concern, but the Fifth Circuit held that such statements were not, as a matter of law, involving a matter of public concern where the statements were made by a *school principal,* to an ISD committee, to the school board, and not as a private citizen. 333 F.3d 563.

In a similar case, the Fifth Circuit noted that it has found:

> "unprotected employee speech in situations where the speech at issue is not explicitly required under the employee's official duties but nonetheless is related to those duties. We held that a school athletic director who submitted internal memoranda to his principal accusing the school of athletic budget mismanagement engaged in unprotected employee speech, because his speech focused on his "daily operations," reflected "special knowledge" gleaned from his position, and was "part-and-parcel of his concerns" in running the school's athletic department."

*Harrison v. Lilly*, 854 F. App'x 554, 556-57 (5th Cir. 2021) citing *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 690-91, 694 (5th Cir. 2007).

Furthermore, when evaluating whether speech was made as a citizen regarding a matter of public concern, courts take into consideration the content, form, and context of the alleged speech. *Connick v. Myers*, 461 U.S. 138, 148, 103 S. Ct. 1684, 1690 (1983). In *Dorsett v. Board of Trustees for State Colleges & Universities*, a professor complained about the administration's assignment of summer and overload classes to himself and other peers. 940 F.2d 121, 124 (5th Cir. 1991). Dorsett later alleged that he spoke out as a citizen whose primary concern was the lowering of academic standards. *Id* at 124. The court held that while the well-drafted pleadings alleged the correct elements, when the content, form, and private context of the alleged criticism were examined, Dorsett was clearly complaining about a matter of private interest, mainly his personal concern about employee matters. *Id*.

### i.  *Plaintiff's communications to HR and City officials regarding her own employment status*

Here, Plaintiff contends that her statements (1) to HR about the status of the Workshield investigation, (2) to City officials relating to her alleged demotion and termination, and lastly, (3) to a City Council member about the actions of an employee she is tasked with supervising were made as a private citizen about matters of public concern. Clearly these statements were made as an employee of the city regarding internal employment and supervisory matters, not matters of public concern.  In fact, if Plaintiff's analysis were correct, it would be hard to imagine any statement by a public employee that would not be deemed to be regarding matters of public concern.

Plaintiff's alleged statements in her Amended Complaint clearly follow the same logic as in *Williams*.  As Library Director, Plaintiff had special knowledge of employee supervision, sign placement, and HR investigations. Without her position as an actual employee of the City, she would not have knowledge of the internal investigations, demotions, or firing practices. The

matters alleged by Plaintiff cannot be matters of public concern because the public would have no way of knowing such matters existed.

Specifically, regarding her text message about the Workshield investigation, Plaintiff contends that her statement "communicated only the procedural status of the investigation." Amended Compl. ¶ 36. Such information could only have been obtained by the employee under investigation herself and is absolutely under the same classification as the coach's speech in *Williams*. It could only have been obtained by special knowledge gleaned from her position as an employee and is "part and parcel" of her concern as a library employee. A public citizen would have no way of knowing or have concern for the procedural status of a confidential internal employee investigation.

If Plaintiff's interpretation of the rule was the law, then every non-HR public employee's communications to HR would address matters of public concern because it would be "outside the scope of their ordinary responsibilities." Amend. Compl. 47. Obviously, this is an attempt to apply a gross expansion of the rule.

Furthermore, Plaintiff's communication of the procedural status of the investigation cannot be taken out of context and re-written as a communication regarding the "suppression of a public library director's expressive activity and the City's use of a sham HR process to maintain that suppression." Amend. Compl. ¶ 34. Following *Dorsett*, Plaintiff is stuck with the original content, form, and context of her statement, not what she attempts to transform it into via artful pleading amendments to avoid dismissal. 940 F.2d 124.

### ii. Plaintiff's response to Defendant Hene

The same applies to Plaintiff's response to Defendant Hene regarding the "*great library*" sign. Her alleged statement was "identifying to him that the sign was placed by a Reference staff member without her authorization." Amend. Compl. ¶ 52. This relates specifically to her duty to

supervise employees and is knowledge she could have only had based on her position. Plaintiff alleges that the content of the above statement was "an explanation of the Library's editorial processes and the absence of any political provocation." Amend. Compl. ⁋52. Plaintiff's actual statement is not referring to a matter of public concern, neither does it explain the Library's editorial process. When Plaintiff's actual words about who placed the sign are analyzed for their content, form, and context, creative legal arguments cannot transform them, *ex post*, into a matter of public concern. See *Dorsett,* 940 F.2d at 124.

Furthermore, Plaintiff cannot expropriate the Library's alleged expression of the "*great library*" poster and make it her own speech to defeat the *Pickering* balancing test. Amend. Compl. ⁋ 53.

### iii. The "great library" sign

To the extent Plaintiff asserts her original claim that the "*great library*" poster was her protected speech, Plaintiff's job duties included displaying signage and communicating with the public. Compl. ⁋ 13. The alleged statement (the "*great library*" poster) is expressly within her admitted duties as the Director. Compl. ⁋ 13.

### iv. Garcetti analysis of alleged speech

As in *Garcetti*, Plaintiff's expressions are exclusively made in the context of carrying out her job duties as Library Director, and therefore outside of First Amendment protection.

In *Garcetti*, the Court held that restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties on the employee might have enjoyed as a private citizen. *Garcetti* at 422. It simply reflects the exercise of employer control over what the employer itself has commissioned or created. *Id* at 421-422. Plaintiff alleges all three instances of speech (response to Hene, appeals to City officials, and text to HR) in her Amended Complaint were made in her capacity as a private citizen. However, all the alleged

statements pertain to Plaintiff's employment relationship to the City, her specific duties as Library Director, and were about matters totally outside of and unknown to the public. None of the statements could or would have been made by Plaintiff if she were not a public employee.  Again, if Plaintiff's interpretation of First Amendment protection was applied, all a public employee's communications with HR or another ancillary department outside of his official job description would qualify as matters of public concern.

This same argument applies to Plaintiff's viewpoint discrimination claims briefed below.

**C.      Plaintiff failed to sufficiently plead her claim of viewpoint discrimination.**

### 1.  *Applicable Law*

To succeed on a claim of viewpoint discrimination under § 1983, a plaintiff must demonstrate:

(1) Plaintiff engaged in constitutionally protected speech;

(2) The speech's viewpoint was a substantial or motivating factor in the adverse action;

*Doe v. Harrell*, 841 F. App'x 663, 669 (5th Cir. 2021); *Heaney v. Roberts*, 846 F.3d 795, 802 (5th Cir. 2017).

Viewpoint discrimination occurs only when "the ***specific motivating ideology or the opinion*** or perspective of the speaker is the rationale for the restriction." *Heaney*, 846 F.3d at 802 (5th Cir. 2017)(quoting *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995)).

In *Doe v. Harrell*, the plaintiff's viewpoint discrimination claim was properly dismissed via Rule 12(b)(6) motion because the plaintiff did not allege any viewpoint was communicated to the ostensibly discriminating public employee.  841 F. App'x 669-70.  The plaintiff pled that he had certain views about vaccines but not that he ever communicated those views to the accused professor, which was a fatal flaw.  *Id.*

### 2. *Plaintiff's Complaint fails.*

Once again, Plaintiff's claim of viewpoint discrimination fails for all the alleged statements either on the basis that Plaintiff has not pled either the speech or the resulting viewpoint which was deprived. Repeatedly in her Complaint, Plaintiff admits that "she did not make" the speech regarding the "*great library*" poster, neither did she authorize, commission, approve, or direct it. Amend. Compl. ℙ 18. Plaintiff also strangely refers to the alleged suppression of the *Library's* viewpoint repeatedly, but not her own, which is not a cognizable basis for any claim, at all. Amend. Compl, ℙ 16, 64. If Plaintiff failed to engage in speech, then she necessarily failed to express a viewpoint.

Regarding the other examples of alleged speech, Plaintiff's text message to HR "only relates to the procedural status of her investigation." Amend. Compl. ℙ 36. Plaintiff cannot travel back in time and amend the text to insert an actual viewpoint. While Plaintiff alleges that the statement pertained to the City's impermissible retaliation against a public employee, the court must address the actual speech made. Amend. Compl. ℙ 33; *Dorsett*, 940 F.2d at 124. Once again, Plaintiff is attempting to turn a statement clearly made in her official capacity about private matters directly related to her employment into a grandiose allegation of a matter of public concern.

Similarly, Plaintiff's appeals to City officials regarding her alleged demotion and ultimate termination also fail to show viewpoint discrimination. Assuming that the appeals were constitutionally protected speech, Plaintiff has failed to show that any alleged viewpoint expressed therein was a substantial or motivating factor in the adverse action. *Doe,* 841 F. App'x at 669. Additionally, the alleged adverse action had already taken place at the time Plaintiff made her appeal and thus cannot be a but-for cause of the termination.

Nowhere else in the Complaint does Plaintiff allege a viewpoint of hers that has been discriminated against. The Complaint points out that Plaintiff was asked to demonstrate tolerance

of other people's viewpoints but fails to allege that her own viewpoint(s) were silenced. Amend. Compl. ¶ 15.   Encouraging the tolerance towards the viewpoints of other individuals and organizations does not discriminate against Plaintiff's viewpoint but, in fact, goes to the very spirit of the First Amendment.

Due to the absence of any expressed viewpoint by Plaintiff, the Complaint fails to state a claim for viewpoint discrimination under 42 U.S.C. § 1983.

The arguments from *Garcetti* briefed in Section IV(B)(2)(b) above equally apply to Plaintiff's viewpoint discrimination claim as it involves expression squarely within Plaintiff's job duties with the City.   Defendants will spare the Court the recitation of the same caselaw and argument from Section IV(B)(2)(b) again in this section.

**D.    Plaintiff's request for injunctive relief and a declaratory judgment fall with her § 1983 claims.**

Plaintiff's requests for injunctive relief and a declaratory judgment are based on her First Amendment retaliation and viewpoint discrimination claims, and, as such, the requests fall with those underlying causes of action.  See e.g. *Collin Cty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 172 (5th Cir. 1990) (failure of underlying cause of action precluded pursuing declaratory judgment).  Declaratory judgment is merely a form of relief that a court may grant for an underlying claim, without which declaratory relief is not available.  *Val-Com Acquisitions Tr. v. Citimortgage, Inc.*, 421 F. App'x 398, 400-01 (5th Cir. 2011).  If the underlying claims are dismissed, claims for declaratory relief or injunctive relief must also be dismissed.  *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 856 (S.D. Tex. 2018).

Since Plaintiff has not pled sufficient facts to support First Amendment retaliation or viewpoint discrimination, she cannot be entitled to declaratory or injunctive relief.

**E.    Defendants Hene and Franklin are entitled to Qualified Immunity.**

### 1. *Applicable Law*

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 2093 (2012).

Courts undertake a two-pronged test to determine whether a government official is entitled to qualified immunity, analyzing: "(1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct." *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023). For a right to be clearly established, it must be clear "that every reasonable official" would have understood that his actions violate the right. *Reichle,* 566 U.S. at 664.

The Supreme Court has repeatedly instructed courts "not to define clearly established law at a high level of generality" and that the ultimate question is whether the "*particular* conduct" in the "specific context of the case" is violative. *Guerra*, 82 F. 4th at 285, quoting *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) (emphasis original).

At the pleading stage, the "crucial question is whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under § 1983 and would overcome their qualified immunity defense." *Id*. In the context of a Rule 12(b)(6) motion it is the "***plaintiff's*** burden to demonstrate that qualified immunity is inappropriate." *Id.* (emphasis added).

For example, in *Guerra*, the defendant officer was entitled to qualified immunity because the plaintiff could not point to relevant authority holding that the officer's refusal of his superior's instructions in the context of his employment as a patrol sergeant was a violation of a clearly established right. *Id*. at 289-90.

### 2. *Plaintiff's Claims against Hene and Franklin.*

Defendants Hene and Franklin are government officials.  Plaintiff cannot satisfy her burden of showing that Hene's or Franklin's particular conduct in the specific context of the underlying facts of this case violates a clearly established right of Plaintiff.  Therefore, Plaintiff's claims against Hene and Franklin should be dismissed as Hene and Franklin are entitled to qualified immunity.

Insofar as Plaintiff alleges that Defendant Franklin's and Hene's actions violate her First Amendment rights, her own pled instances of speech all fail the Garcetti test for speech on a matter of public concern as outlined above. Therefore, Defendants Franklin and Hene cannot be liable because all the alleged speech was made in Plaintiff's official capacity as a City employee, not as a public citizen regarding matters of public concern.

### F.    *Monell* Liability

Plaintiff also alleges a *Monell* claim against the City in her Complaint.  Amend. Compl. ¶¶ 58-61.

#### 1.    *Applicable Law*

Municipal liability under Section 1983 (i.e. a *Monell* claim) requires three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom.  *Guerra*, 82 F.4th 290.

"To be a policymaker, neither complete discretionary authority nor the unreviewability of such authority is enough; there must be more."  *Id*. (internal quotations omitted).

In *Guerra*, the plaintiff's *Monell* claim was dismissed under Rule 12(b)(6) for failing to adequately plead a "policymaker" because his complaint did not identify facts that established the defendant city delegated policymaking authority to the City Manager who terminated the plaintiff. *Id*. at 291.

There are three routes to establish an "official policy":

(1) A policy statement formally announced by an official;

(2) A persistent widespread practice of city officials or employees is so common and well settled as to constitute a custom that fairly represents municipal policy; or

(3) a single unconstitutional act by a final policymaker. *Cambric v. City of Corpus Christi*, 170 F.4th 321, 325 (5th Cir. 2026).

"A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct… and requires sufficiently numerous prior incidents, as opposed to isolated instances." *Id*. (internal citations omitted).

In *Cambric*, the plaintiff attempted to plead *Monell* liability under (2) "custom or practice" but failed since she only pled one example of uneven code enforcement to support her claim though she recited the caselaw phrase that the city "had a pattern, practice, or custom of selective enforcement." *Id*.

### 2. *Plaintiff fails to adequately plead Monell liability.*

The easiest path to the conclusion that Plaintiff failed to adequately plead *Monell* liability is that there is no violation of a constitutional right, at all, in her Complaint—much less one whose moving force was a City policy. This is briefed in detail above and is sufficient to defeat her *Monell* claim on its own.

Plaintiff has not attempted to plead a *Monell* liability "policy" under the first or third routes from *Cambric*; she only attempted to plead a policy under the second route (persistent widespread practice). However, Plaintiff comes nowhere close to pleading facts showing actions that have occurred for so long and with such frequency that the course of conduct demonstrates the City's knowledge and acceptance of the disputed conduct. She only specifies a single incident of ostensible constitutional right violations (which Defendants contend is not a violation, either).

Plaintiff does not plead sufficient facts to support any of the three elements for *Monell* liability against the City, and her claim should be dismissed.

## G. Plaintiff's claim regarding Procedural Due Process fails.

In order to maintain a claim of governmental deprivation of a constitutionally protected property interest in employment, plaintiff must show that she was entitled to her continued employment. Such entitlement may arise from contract or policy wherein the ability to terminate without cause is eliminated. *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016). Without such express entitlement, an employee who is terminable at will generally has no constitutionally-protected property interest. *Id*.  Furthermore, such an entitlement or property interest cannot be defined by the procedures provided for its deprivation. *Id*.

Plaintiff has failed to show a contract or policy depriving the City of the ability to terminate an employee without cause. As shown in *Stem*, the presence of a disciplinary process for termination does not give rise to an employment contract, nor negate the ability to terminate without cause.  Plaintiff had no constitutionally protected property interest in her continued employment and therefore was not deprived of a right thereof. This claim against the City and Defendant Franklin must fail on the basis that Plaintiff has failed to show her employment was anything other than the Texas default: at-will employment.

## H. Plaintiff's claim regarding Substantive Due Process fails.

In order to maintain a claim of violation of Plaintiff's substantive due process, she must show (1) she was deprived of a constitutionally protected right, and (2) the governmental action was not rationally related to a legitimate government interest. *Residents v. Zone*, 260 F. Supp. 3d 738, 787 (S.D. Tex. 2017).

First and most importantly, Plaintiff cannot show a constitutionally protected right violated by the City, or Defendant Franklin, and, therefore, this claim fails. This is briefed in detail above.

Furthermore, the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). Courts have set the standard above mere tort liability but at such activity which would "shock the conscience." *Id*. Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level. *Id* at 849.

"That bar is exceedingly high, requiring conduct intended to injure that is unjustifiable by any government interest." *Kennedy v. City of Arlington*, 165 F.4th 937, 945 (5th Cir. 2026) (internal quotations omitted).   "Deliberate indifference … is insufficient for persons in an employment relationship with the government."  *Id.*

Plaintiff's allegations regarding her termination are common employee gripes concerning an employment decision they disagree with, not at all the type of conduct that is so egregious that it shocks the conscience.

In a similar scenario, a terminated police chief's substantive due process claim was properly dismissed where the facts on which he relied were that the city did not follow proper chain of custody procedures regarding documents forming the basis of the termination and relied on an unqualified handwriting expert in his internal appeal hearing.  *Young v. City of St. Charles*, 244 F.3d 623, 625-26 (8th Cir. 2001).  The Eight Circuit affirmed the trial court's 12b6 dismissal since the plaintiff's employment gripes did not come near the standard of "shocking the conscience."  *Id*. at 628.

In *Lewis v. Univ. of Tex. Med. Branch,* the Fifth Circuit held that the plaintiff's claim that his termination violated his substantive due process rights were insufficient as a matter of law where his termination was based on the undisputed fact that he refused to work with his employer

on developing a performance improvement plan, which did not shock the conscience even if the plaintiff felt that the decision was unfair or unwise.  665 F.3d 625, 631 (5th Cir. 2011).

Plaintiff's substantive due process claim fail to meet the required standard and should be dismissed.

## V.    CONCLUSION AND PRAYER

Plaintiff's Complaint fails to plead a plausible claim for First Amendment retaliation or viewpoint discrimination, fails to carry Plaintiff's burden of overcoming qualified immunity for Defendants Hene or Franklin, and fails establish a plausible claim for *Monell* liability against the City. Additionally, Plaintiff has failed to show a constitutionally protected property interest in her continued employment and therefore her claims for violations of due process should be dismissed.

Therefore, Defendants respectfully request that this Court grant their Motion to Dismiss in its entirety, and for all other and further relief to which they may be justly entitled.

Respectfully submitted,

/s/ *Eric Kolder*
ERIC KOLDER
Attorney-In-Charge
State Bar Card No. 24083323
eric@kolderfirm.com
MARY KOLDER
State Bar No. 24083324
mary@kolderfirm.com
**KOLDER LAW FIRM, PLLC**
102 N. College, Suite 402
Tyler, Texas 75702
(903) 262-8708

*ATTORNEYS FOR DEFENDANTS*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service July 8, 2026. Local Rule CV-5(a)(3)(A).

/s/ *Eric Kolder*
ERIC KOLDER