**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF TEXAS**

**TYLER DIVISION**

| | | |
|---|---|---|
| ASHLEY TAYLOR,<br>　　　Plaintiff, | § <br> § <br> § | |
| v. | § <br> § | Civil Action No. 6:26-cv-00168-JDK |
| CITY OF TYLER, TEXAS;<br>STEPHANIE FRANKLIN, in her<br>individual and official capacities;<br>STUART HENE, in his individual<br>and official capacities; and<br>GRASSROOTS AMERICA — WE THE<br>PEOPLE,<br>　　　Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | JURY TRIAL DEMANDED |

**DEFENDANT GRASSROOTS AMERICA – WE THE PEOPLE'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
<u>FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)</u>**

**I. INTRODUCTION**

Plaintiff's Response confirms, rather than cures, the defects identified in GRA's Motion.

Unable to defend the First Amended Complaint on its own allegations, Plaintiff repeatedly retreats

to a different pleading — the proposed Second Amended Complaint she filed the same day (Doc.

31) — and to the Nix subpoena materials attached to it (Exhibit A). But the motion before the

Court is directed at the First Amended Complaint (Doc. 27), and the Court's Rule 12(b)(6) analysis

is confined to that pleading. Stripped of the materials outside it, the Response identifies no false

statement of fact of and concerning Plaintiff, no legal right under her at-will employment with

which GRA interfered, and no way to bridge a causal chain that, by Plaintiff's own allegations,

runs through independent municipal decisionmakers and a state-tax matter Plaintiff admits had no

connection to GRA. Count III and Count IV should be dismissed with prejudice.

1

Two threshold points frame the entire Response. First, Plaintiff's lead argument is circular: she invokes "defamation" as the "unlawful conduct" that supposedly removes GRA's advocacy from the protection of *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), but whether the speech is defamatory is the very question presented — and, for the reasons below, it is not. Second, the Response leans heavily on evidence (the Nix texts) and a pleading (the SAC) that are not properly before the Court on a motion directed at the First Amended Complaint. Neither can manufacture a claim the First Amended Complaint does not state.

## II. ARGUMENT

**A. Plaintiff's Response Impermissibly Relies on Matters Outside the First Amended Complaint.**

On a Rule 12(b)(6) motion, the Court accepts the operative complaint's well-pleaded factual allegations as true and may consider the complaint, documents incorporated by reference or referred to in the complaint and central to the claim, and matters properly subject to judicial notice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). Plaintiff's Response repeatedly does the opposite. It quotes verbatim from the Nix text messages attached as Exhibit A to the proposed Second Amended Complaint, and it expressly invokes SAC paragraphs — for example, SAC ¶ 54 (HR "machinery") and SAC ¶ 89 (private-figure allegation) — to supply content the First Amended Complaint does not contain. The Response even concedes the maneuver, describing the SAC as filed "simultaneously" and offering its First Amended Complaint arguments "in the alternative."

That will not do. A plaintiff may not defeat a motion to dismiss the operative complaint by pointing to allegations and evidence in a proposed superseding complaint that the Court has not

2

permitted her to file. If the First Amended Complaint does not state a claim on its own four corners, the motion should be granted; the pendency of a proposed amendment does not change the analysis. And for the independent reasons set out in GRA's separately filed opposition to Plaintiff's Motion for Leave, the proposed amendment is itself futile and should not be permitted. The Court should evaluate the First Amended Complaint as it stands — and as so evaluated, it fails.

**B. The First Amendment Forecloses Both Claims Against GRA.**

**1. Claiborne Hardware bars liability for the protected advocacy at issue.**

Plaintiff reads *Claiborne Hardware* backward. *Claiborne Hardware* holds that damages may not be imposed for losses caused by nonviolent, constitutionally protected political activity; liability must instead be tied to unprotected or unlawful conduct that the defendant authorized, directed, or ratified. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 915–18, 926–29 (1982). The "authorize, direct, or ratify" theory Plaintiff invokes presupposes an underlying act that is itself outside the First Amendment's protection. Here, the only conduct Plaintiff identifies is speech — GRA's posts and its appeals to elected officials — and the sole candidate for an "unlawful" act is defamation. Because that defamation predicate fails as a matter of law (Section II.C), no unprotected act remains for GRA to have "authorized" or "ratified," and *Claiborne Hardware* bars the claim. The First Amendment leaves "breathing space" for "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials," *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964), and Plaintiff's attempt to recharacterize combative political rhetoric as an "unlawful goal" cannot evade that protection. The Complaint pleads no true threats, no incitement, and no fraud; only protected advocacy remains, and its persuasive effects are not actionable. Speech addressing matters of public concern occupies the highest rung of First Amendment protection. *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011).

**2. The Petition Clause and Noerr-Pennington bar liability for GRA's appeals to elected officials.**

Plaintiff does not dispute that GRA's core conduct was tagging and appealing to the Mayor, the Council, and mayoral candidates — paradigmatic petitioning. Compl. ¶ 21. The Fifth Circuit applies *Noerr-Pennington* beyond antitrust to contexts where liability would burden Petition Clause activity. *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988); *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 859-61 (5th Cir. 2000). Plaintiff's counterarguments fail. Her lead authority, *Clark v. Jenkins*, 248 S.W.3d 418 (Tex. App.—Amarillo 2008, pet. denied), is a non-binding intermediate state decision that applied a Texas common-law qualified privilege presupposing actionable defamation; because Plaintiff has not pleaded actionable defamation, *Clark* never engages. That petitioning was "public-facing" is irrelevant — *Bayou Fleet* applied the doctrine to publicized lobbying. 234 F.3d at 859-60. And the "sham" exception does not apply, because a sham requires petitioning that is "objectively baseless" such that no reasonable petitioner could expect success. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993). By Plaintiff's own allegations, the petitioning achieved the governmental response it sought and therefore was not objectively baseless. Compl. ¶ 22; *Bayou Fleet*, 234 F.3d at 861; see *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60–61 & n.5 (1993). Successful petitioning is, by definition, not a sham.

**C. The Defamation and Business-Disparagement Predicate Fails as a Matter of Law.**

**1. The publication is not "of and concerning" Plaintiff.**

The text of the September 26, 2025 post is fixed and properly considered here. *Causey*, 394 F.3d at 288. It stated that "The Tyler Mayor & Council are STILL proud of exposing taxpayer-

4

funded smut to minor children," and tagged the Mayor, all Council members, and three named mayoral candidates. Compl. ¶ 21. It did not name Plaintiff, identify her by title, or attribute any conduct to her. A publication that on its face "refer[s] to no person who could possibly be identified as [the plaintiff]" cannot support a defamation claim, and where the publication names others, whether it is "of and concerning" the plaintiff is a question of law. *Newspapers, Inc. v. Matthews*, 339 S.W.2d 890, 893 (Tex. 1960); Restatement (Second) of Torts § 564 (1977). Plaintiff's "defamation-by-implication" and "representative face" theories are precisely the inference-from-institutional-role approach Texas courts reject where the publication identifies other persons by name. *Matthews*, 339 S.W.2d at 893. Small-group libel does not help: the group the post names — the Mayor, the entire Council, and three candidates — does not include Plaintiff. Restatement (Second) of Torts § 564A. Nor does GRA's June 10, 2026 chart cure the defect. A statement that the City's "failure to act made quite an expensive mess with a lawsuit being filed by a city employee" does not name Plaintiff and is not a verifiable false statement of fact about her professional conduct; and, published in June 2026, it cannot retroactively make the September 2025 post "of and concerning" her. The chart's reference to a lawsuit filed by a city employee may identify Plaintiff as the litigant, but it does not retroactively transform the September 2025 post into a statement about her, nor does the chart itself falsely attribute professional or criminal conduct to her.

**2. The operative language is non-actionable opinion and rhetorical hyperbole.**

"Statements that cannot reasonably be interpreted as stating actual facts about an individual are protected." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970). The word at the center of Plaintiff's claim — "smut" — is a value-laden moral and political epithet, not a verifiable factual assertion, particularly read in

the context Plaintiff herself pleads: a partisan advocacy account, a multi-year ideological dispute over library materials, and a post tagged to elected officials and candidates. *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 154, 157 (Tex. 2004); *Bentley v. Bunton*, 94 S.W.3d 561, 579-81 (Tex. 2002). Plaintiff's contrary reading of *Bentley* proves the point: *Bentley* involved repeated, specific factual accusations that a named judge was "corrupt," 94 S.W.3d at 583-85, whereas the post here is a single political epithet about library policy directed at elected officials. That a colloquial term appears alongside a photograph does not convert moral criticism into a provable fact about Plaintiff.

### 3. Actual malice is not plausibly pleaded.

The Director of the Tyler Public Library is, at minimum, a limited-purpose public figure as to the library controversy, and the Complaint's allegations support public-official treatment under *Rosenblatt v. Baer*, 383 U.S. 75, 85-86 (1966), as to commentary on her official performance. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974); *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 573 (Tex. 1998). Plaintiff's attempt to recast herself as a private figure rests on SAC ¶ 89 — an allegation absent from the operative First Amended Complaint and not properly before the Court. Either status triggers the actual-malice requirement, and the First Amended Complaint does not plausibly plead it. The Library Board's discretionary 5-1 policy vote to retain contested materials is not an adjudication that the materials were non-obscene; continued disagreement with a policy choice is a difference of opinion on a matter of public concern, not knowledge of falsity. Statements of political zeal such as "this is war" evidence hostility, not knowledge that a verifiable fact was false; ill will is not actual malice. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). The Fifth Circuit applies the ordinary *Iqbal/Twombly* plausibility standard to actual malice, and the Complaint's labels — "willfully," "false" — do not suffice. *Walker v.*

6

*Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 743-45 (5th Cir. 2019). And because the operative statement is opinion, actual malice is academic: a pure opinion cannot be "false" in a constitutionally cognizable sense. *Milkovich*, 497 U.S. at 20.

### 4. The timeliness problem is not cured.

Texas's one-year libel limitations period runs from publication. Tex. Civ. Prac. & Rem. Code § 16.002(a); *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 142 (5th Cir. 2007). Plaintiff's invocation of unspecified "April 2025 publications" is precisely the kind of conclusory, non-particularized allegation that cannot carry a defamation claim; the First Amended Complaint does not plead the content, date, or "of and concerning" character of any such publication with the specificity Texas law requires. The September 26, 2025 post and the June 10, 2026 chart are the only identified timely publications, and both fail for the independent reasons above. Contextual admissibility of earlier conduct to show malice is not a substitute for a timely, legally sufficient defamatory statement.

### 5. Business disparagement independently fails for want of special damages.

To the extent Plaintiff's claim sounds in business disparagement, it independently fails because she pleads no special damages in the form of specific lost "trade or other dealings." *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 767 (Tex. 1987); *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020). Plaintiff lost a job, not commercial customers or transactions; her asserted lost salary and benefits sound in defamation (if anywhere), not disparagement. *In re Lipsky*'s per se relaxation applies to defamation, not to disparagement. *In re Lipsky,* 460 S.W.3d 579, 593, 596 (Tex. 2015); *Innovative Block*, 603 S.W.3d at 417.

7

**D. Count III Fails Under Both Texas Tortious-Interference Frameworks.**

Plaintiff cannot escape the two-track structure of Texas tortious-interference law. Treated as interference with prospective relations, Count III requires independently tortious conduct, and the only candidate — defamation — fails as a matter of law for the reasons above. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). Treated as interference with an existing at-will relationship, *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex. 1989), confirms only that at-will status is no bar to suit; it does not relieve Plaintiff of pleading a "willful and intentional act of interference" with a legal right under the employment relationship. *Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995); *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421-22 (Tex. 2017). The First Amended Complaint identifies no contractual term, policy, or legal entitlement that GRA's public speech displaced. Plaintiff's rejoinder — that the SAC alleges GRA exploited the City's "HR machinery," SAC ¶ 54 — again relies on a pleading not before the Court, and in any event describes the City's exercise of its own discretionary personnel processes, not interference with a legal right by GRA. Public criticism followed in temporal sequence by an at-will employer's discretionary decisions is not a plausibly pleaded act of interference. *Iqbal*, 556 U.S. at 678.

**E. Proximate Cause Is Not Plausibly Pleaded; the "Cat's-Paw" Analogy Is Inapposite.**

The First Amended Complaint's own causal chain defeats proximate cause. Its most consequential admission is that the City's decisionmakers told Plaintiff the demotion was driven by "major strife" in legislative-relations negotiations with State Representative Daniel Alders concerning unrelated tax legislation — a matter Plaintiff alleges she "had no prior knowledge of" and that has no pleaded connection to GRA. Compl. ¶ 30. On the Complaint's allegations, the injury is the product of a series of intervening, independent municipal decisions: the demotion

8

ultimatum, administrative leave, an outside investigation that closed without adverse findings, the City Manager's decision, and the Mayor's declination to act on the appeal. Protected advocacy followed by independent governmental employment decisions is not legally cognizable proximate cause. Plaintiff's cat's-paw analogy is inapposite: that doctrine allocates an employer's liability for a biased subordinate's influence within the same organization; it does not impose tort liability on a private third party for a government employer's independent personnel decisions, and Plaintiff cites no case extending it that far. *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016), does not assist her, because the City's independent decisions — grounded in a rationale Plaintiff admits was unrelated to GRA — were not the foreseeable, intended product of GRA's speech in the legally required sense.

### F. Punitive Damages Fall with Counts III and IV.

Because Count III and Count IV fail, Plaintiff's derivative request for punitive damages necessarily falls with them. Punitive damages are not a freestanding cause of action; they require a viable underlying tort. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998).

### III. CONCLUSION

For the foregoing reasons, and those set forth in its Motion (Doc. 29), Defendant Grassroots America – We the People respectfully requests that the Court dismiss Count III and Count IV with prejudice, and grant GRA such other and further relief to which it is justly entitled. Because an amended complaint would remain subject to dismissal for the foregoing reasons, further amendment would be futile. *Stripling v. Jordan Production Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000).

Respectfully submitted,

DHILLON LAW GROUP INC.


/s/ James E. Trainor, III
James E. Trainor, III
   Texas Bar No. 24042052
   Attorney-in-Charge
   JTrainor@dhillonlaw.com

Dhillon Law Group Inc.
177 Post Street, Suite 700
San Francisco, CA 94108
Tel: (415) 433-1700
Fax: (415) 520-6593

ATTORNEY FOR DEFENDANT
GRASSROOTS AMERICA – WE THE PEOPLE


## CERTIFICATE OF SERVICE

I certify that on the date of the electronic file stamp affixed by the Court's CM/ECF system,

a true and correct copy of the foregoing was served on all counsel of record via that system.


/s/ James E. Trainor, III
James E. Trainor, III

10